### In re KROH BROTHERS DEVELOPMENT CO., et al., Debtors.

### KROH BROTHERS DEVELOPMENT CO., et al., Plaintiffs,

### v.

### UNITED MISSOURI BANK OF KANSAS CITY, N.A., Defendant.

**Bankruptcy No. 87–00610–1–11.**
**Adv. No. 89–4035–1–11.**

United States Bankruptcy Court, W.D. Missouri.

Dec. 18, 1989.

Pete Smith, McDowell, Rice & Smith, Thomas M. Franklin, Polsinelli, White, Vardeman, et al., Mo., for plaintiffs.

Thomas E. Deacy, Jr., Gary Cupples, Deacy & Deacy, Kansas City, Mo., for defendant.

### MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

Plaintiffs Kroh Brothers Development Company and The Kroh Operating Limited Partnership sued United Missouri Bank ("UMB") to recover alleged setoffs and preferential transfers. Four months later UMB filed a demand for jury trial, which plaintiffs moved to strike as untimely. UMB also filed a motion for withdrawal of reference by the district court, based on the argument that the bankruptcy court cannot conduct a jury trial. By order en-

tered December 5, 1989, District Judge Howard Sachs denied UMB's motion for withdrawal of reference. 108 B.R. 228 (W.D. Mo).

Three issues are pending: whether UMB filed a timely jury demand; whether UMB has a Seventh Amendment right to jury trial; and if UMB has a Seventh Amendment right to a jury trial, whether a bankruptcy judge has authority to conduct the jury trial.[1] This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## FACTS

On February 10, 1989 plaintiffs filed a complaint for recovery of setoffs and preferences. UMB filed a motion to dismiss for lack of standing. After denial of the motion to dismiss, on May 1 UMB filed its answer. Plaintiffs then filed an amended complaint alleging an avoidable prepetition setoff, preferential transfers and an insider preference under 11 U.S.C. §§ 553(b) and 547(b). Each count seeks a money judgment. On May 22, UMB answered the amended complaint. On June 27, 1989, eight weeks after the original answer was filed and four days after *Granfinanciera, S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), was issued, UMB filed a demand for jury trial. UMB has not filed a proof of claim against the estate or a counterclaim in this adversary proceeding.

## I. UMB'S DEMAND FOR JURY TRIAL

F.R.C.P. 38 governs the time for demanding a jury trial. Plaintiffs contend UMB waived any right to a jury because UMB filed its demand eight weeks after the Rule 38 deadline. UMB contends the demand was timely because Rule 38 does not apply in bankruptcy court. UMB contends Rule 38 does not apply because Bankruptcy Rule 9015, which mirrored F.R.C.P. 38 and 39, was abrogated in 1987.

Before 1987, Bankruptcy Rule 9015, which substantially adopted F.R.C.P. 38 and 39, provided a procedure for demanding jury trials in bankruptcy cases. After Congress eliminated Rule 9015 in 1987, bankruptcy courts have applied F.R.C.P. 38 in its stead. *See In re 222 Liberty Assoc.,* 99 B.R. 639, 643 (Bankr.E.D.Pa.1989); *In re Jackson,* 90 B.R. 126, 133 (Bankr.E.D. Pa.1988); *In re Direct Satellite Communications Inc.,* 91 B.R. 7, 9 (Bankr.E.D.Pa. 1988); *In re W.G.M.C., Inc.,* 96 B.R. 5, 6 (Bankr.D.Me.1989).

■ The court concludes that F.R.C.P. 38 applies to bankruptcy court trials in the absence of a specific bankruptcy rule for jury demands, and that UMB failed to file a timely demand. Under Rule 38 the demand was due within 10 days after UMB's original answer which was filed May 1, 1989. However, F.R.C.P. 39(b) allows a party who fails to comply with the Rule 38 deadline to request a jury trial by motion. An untimely demand may substitute for formal motion. *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983).

■ Rule 39(b) motions should be liberally granted when no prejudice results. *Littlefield v. Fort Dodge Messenger,* 614 F.2d 581, 585 (8th Cir.1980). Three factors were considered to determine whether prejudice would result in this case: (1) whether there are issues triable by jury; (2) the length of delay in filing the motion; and (3) the reason for failure to file a timely demand. First, the amended complaint contains issues triable by a jury. Second, UMB's demand was eight weeks late, but it was filed several months before the scheduled trial date, so plaintiffs had adequate notice of the jury demand in order to prepare accordingly.[2] Third, UMB delayed filing a demand because it did not realize it had a

---

1. This would not be the first bankruptcy jury trial in Missouri. In 1981 Bankruptcy Judge Joel Pelofsky conducted a jury trial in *Linwood v. Crowe,* Case No. 80–0346, a turnover action.

2. Trial was originally set for late 1989. A January 1990 date was agreed to by the parties during the summer, 1989, as reflected in an amended pretrial order filed September 13, 1989. At the time the new trial date was set, it was agreed to schedule two weeks for trial in case it was a jury trial pursuant to UMB's demand.

right to a jury trial until *Granfinanciera* was issued. The court finds UMB's reasons sufficient and pursuant to its discretion under Rule 39(b), grants UMB's request for a jury trial.

## II.  UMB'S RIGHT TO JURY TRIAL

*Granfinanciera* addressed the sole issue of whether a defendant who had not filed a claim against a bankruptcy estate had a right to jury trial when the trustee sued to recover a fraudulent transfer. The Supreme Court held such a defendant has a Seventh Amendment right to jury trial despite Congress' designation of actions to recover fraudulent transfers as core proceedings in 28 U.S.C. § 157(b)(2)(H). Plaintiffs contend *Granfinanciera* should be read narrowly and that it does not give UMB a Seventh Amendment right to jury trial. Plaintiffs' arguments are without merit.

■ In the present case the real dispute is not whether there is a right to a jury trial, but in what court the trial can be conducted. Accordingly, it is unnecessary to engage in detailed discussion of *Granfinanciera*. In short, the decision held that in actions such as suits to recover fraudulent transfers or preferences, even though they are designated as core proceedings and initially seem equitable in nature, defendant is entitled to a jury trial under the Seventh Amendment if a money judgment is sought and the defendant has not filed a claim against the bankruptcy estate. UMB has not filed a claim against the bankruptcy estate or a counterclaim in this action, and all of plaintiffs' counts seek money judgments for alleged prepetition setoffs and preferential transfers. Accordingly, these proceedings are legal in nature rather than equitable and fall squarely within the type of actions contemplated in *Granfinanciera* as entitling defendant to a jury trial despite designation as core proceedings. The court concludes UMB has a Seventh Amendment right to a jury trial on the counts in plaintiffs' amended complaint.

## III.  BANKRUPTCY COURT JURY TRIALS IN CORE PROCEEDINGS

UMB contends bankruptcy courts lack jurisdiction to conduct jury trials and that *Granfinanciera* mandates withdrawal of reference by the district court. By order dated December 5, 1989, District Judge Howard Sachs denied UMB's motion for withdrawal of reference, rejecting UMB's argument that the bankruptcy court could not conduct a jury trial. 1989 WESTLAW 146624 (W.D.Mo).

■ Plaintiffs argue that bankruptcy courts are empowered to conduct jury trials, citing numerous cases in support of the proposition that 28 U.S.C. § 1411 does not limit a bankruptcy court's power to conduct jury trials. For reasons following, this court concludes that bankruptcy courts are implicitly authorized to conduct jury trials in core proceedings based upon a comprehensive reading of 28 U.S.C. §§ 151, 157, and 1411. It is emphasized that the conclusions stated herein are limited to core proceedings.

In *Granfinanciera*, 109 S.Ct. at 2795, Justice Brennan discussed a test to determine whether there was a Seventh Amendment right to jury trial based on whether an action involves a public or private right. If an action involves a public right, there is no Seventh Amendment right to jury trial. Congress can assign such action to a non-Article III court for a non-jury trial. Public rights include (1) where the government is involved in its sovereign capacity; and (2) where the government is not involved but where Congress has "created a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.* at 2797.

However, if an action involves private rights, Congress cannot strip a party of its Seventh Amendment right to jury trial by delegating the trial to a non-Article III tribunal which does not use juries as fact finders. Private rights correspond to common law tort, contract and property cases. Fraudulent transfer and preference actions seeking money damages concern private

rights and therefore, Congress cannot strip a party of its Seventh Amendment right to a jury trial by assigning the action to a non-Article III tribunal for a non-jury trial. *Id.* at 2794.

The only decision the Supreme Court reached was that the Seventh Amendment entitled petitioners to a jury trial. Justice Brennan emphasized that the Court was not deciding whether bankruptcy courts can conduct jury trials. *Id.* at 2794, 2802. The Supreme Court expressly left unanswered the critical question of whether a bankruptcy court can conduct jury trials in core proceedings or whether it is necessary to transfer such actions to district court. However, Justice Brennan identified questions that need to be answered, including: (A) whether current statutes limit or authorize jury trials in bankruptcy; (B) if Congress has authorized Article I bankruptcy courts to conduct jury trials, whether such grant of power comports with Article III; and (C) whether the Seventh Amendment's standard of review for jury trials would be violated. *Id.* at 2794–95.

### A. Statutory Authority to Conduct Jury Trials

Under 28 U.S.C. § 1411 [3], Congress appears to have left unanswered the question of whether bankruptcy courts can conduct jury trials. This section has been cited for the proposition that bankruptcy court jury trials have been eliminated, but its text is not clear, as discussed by Justice Brennan in *Granfinanciera,* 109 S.Ct. at 2789, n. 3:

Although this section might suggest that jury trials are available only in personal injury and wrongful death actions, that conclusion is debatable. Section 1411(b) provides that "[t]he district court may order the issues arising [in connection with involuntary bankruptcy petitions] to be tried without a jury," suggesting that the court lacks similar discretion to deny jury trials on at least some issues presented in connection with voluntary petitions.

Based on support from cases from numerous jurisdictions,[4] *In re Gaildeen Industries, Inc.,* 59 B.R. 402, 406 (N.D.Cal.1986), reached the same conclusion:

There is no statutory provision applicable in this case, that either expressly authorizes or expressly prohibits jury trials in bankruptcy courts. Nonetheless, it seems clear Congress intended judges to conduct jury trials in appropriate cases.

The thorough analyses of two recent cases, *In re McCormick,* 67 B.R. 838 (D.Nev.1986), and *Dailey v. First Peoples Bank of New Jersey,* 76 B.R. 963 (D.N.J. 1987), are persuasive. The fact that both decisions were issued before *Granfinanciera* and while Bankruptcy Rule 9015 was in effect does not affect the correctness of the analyses. Neither relies on Bankruptcy Rule 9015 for authority to conduct jury trials. In both cases, district courts held that bankruptcy courts retained statutory and constitutional authority to conduct jury trials. They interpreted 28 U.S.C. § 1411

---

**3.** 28 U.S.C. § 1411 states: **Jury Trials**

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

(b) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

**4.** The majority of published cases addressing the issue have concluded that bankruptcy courts have power to conduct jury trials. See, e.g., *In re Boss–Linco Lines, Inc.,* 55 B.R. 299 (Bankr.W. D.N.Y.1985); *In re Blackman,* 55 B.R. 437 (Bankr.D.C.1985); *In re Mauldin,* 52 B.R. 838 (Bankr.N.D.Miss.1985); *In re George Woloch Co.,* 49 B.R. 68 (E.D.Pa.1985); *In re Rodgers &*

*Sons, Inc.,* 48 B.R. 683 (Bankr.E.D.Okl.1985); *In re O.P.M. Leasing Serv., Inc.,* 48 B.R. 824 (S.D.N. Y.1985); *In re Morse Elec. Co.,* 47 B.R. 234 (Bankr.N.D.Ind.1985); *In re Baldwin–United,* 48 B.R. 49 (Bankr.S.D.Ohio 1985); *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (M.D. Ga.1985); *In re Gibbons Const. Inc.,* 46 B.R. 193 (E.D.Ky.1984); *In re Paula Saker & Co.,* 37 B.R. 802 (Bankr.S.D.N.Y.1984); *In re Martin Baker Well Drilling Inc.,* 36 B.R. 154 (Bankr.D.Me. 1984); *See also In re Data Compass Corp.,* 92 B.R. 575 (Bankr.E.D.N.Y.1988); *In re Jackson,* 90 B.R. 126 (Bankr.E.D.Pa.1988); *In re Kenval Mktg. Corp.,* 65 B.R. 548 (E.D.Pa.1986); *In re Adams, Browning & Bates, Ltd.,* 70 B.R. 490 (Bankr.E.D.N.Y.1987); *In re McCormick,* 67 B.R. 838 (D.Nev.1986); *Dailey v. First Peoples Bank of New Jersey,* 76 B.R. 963 (D.N.J.1987); *In re Cohen,* 107 B.R. 453 (S.D.N.Y.1989).

and its legislative history as preserving rather than eliminating jury trial rights in bankruptcy court. Both opinions noted that in the 1984 bankruptcy amendments, Congress adopted many provisions of the Emergency Rule, which was enacted to fill the gap between *Marathon* and the 1984 Amendments. Both cases reasoned that if Congress had intended to eradicate bankruptcy court authority to conduct jury trials, it would have adopted the provisions of the Emergency Rule which prohibited jury trials. *McCormick*, 67 B.R. at 841–43; *Dailey*, 76 B.R. at 967.

### B. Power of Article I Bankruptcy Judges to Conduct Jury Trials

Article I judges are not prohibited from conducting jury trials, as evidenced by federal magistrates, who are similarly situated to bankruptcy judges in that both are Article I courts and are units of the district court. In order for Article I judges to conduct jury trials, there simply must be an adequate statutory grant of authority, such as the Federal Magistrates Act, 28 U.S.C. 636, and the Article I court must not impermissibly exercise the full range of Article III judicial powers, as addressed in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The power of bankruptcy judges to conduct jury trials is derived from 28 U.S.C. §§ 151 and 157. These sections were enacted as part of the 1984 Bankruptcy Amendments and Federal Judgeship Act by which Congress rectified problems with the bankruptcy courts under the Reform Act identified in *Marathon, supra.* These statutes pronounce that the bankruptcy court's authority is derived from the district court.[5]

28 U.S.C. § 151 provides that "bankruptcy judges ... shall constitute a unit of the district court" and that "[e]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding...." In addition, the bankruptcy court's jurisdiction, defined by statute, allows bankruptcy judges to hear only those cases referred to them by the district court. 28 U.S.C. § 157(a). Under this delegation, bankruptcy judges are part of the district court rather than independent non-Article III tribunals. The reference of bankruptcy cases and proceedings under Title 11 by the district court is made to the bankruptcy judges and not to the bankruptcy courts. 28 U.S.C. § 157(a). Bankruptcy courts are no longer separate courts of equity as they were under the Bankruptcy Act, but instead are an integral part of the district court.

It is clear from the language of 28 U.S.C. §§ 151 and 157(b) that Congress has enacted a statutory grant of authority which is sufficient for bankruptcy judges, as units of the district court, to conduct jury trials in core proceedings. From the plain language of § 157(b) it is clear that Congress intended for all core proceedings, including actions for recovery of preferences and fraudulent transfers, to be resolved in bankruptcy courts.

Recent decisions support the conclusion that Article I bankruptcy judges can conduct jury trials. *In re Data Compass Corp.*, 92 B.R. 575, 582–83 (Bankr.E.D.N.Y. 1988), concluded that bankruptcy court power to conduct jury trials in core proceedings is implicit in 28 U.S.C. § 157(b), and further stated that if the right to jury trial always triggered mandatory withdrawal of reference to district court, it would both oppose Congressional intent and further bifurcate proceedings in bankruptcy.[6]

*In re Jackson*, 90 B.R. 126, 133 (Bankr. E.D.Pa.1988), found a right to a jury trial in core proceedings in bankruptcy court under 28 U.S.C. § 157, citing *In re Kenval Marketing Corp.*, 65 B.R. 548 (E.D.Pa. 1986), which required bankruptcy court

---

**5.** Warner, *Katchen Up in Bankruptcy*, 63 Am. Bankr.L.J. 4 (1989).

**6.** It is interesting that in *Data Compass Corp.*, the bankruptcy judge ultimately transferred the case to district court for trial, even though it found jury trials were authorized in bankruptcy court, because that particular bankruptcy court had insufficient staffing and space for the trial.

jury trials in core proceedings. *Jackson* further stated that plaintiff's choice of an equitable forum should not eliminate otherwise viable rights to a jury trial under the Seventh Amendment.

Especially persuasive is the reasoning in *McCormick*, 67 B.R. at 840, where the district court premised its holding on a narrow reading of *Marathon*, which challenged Congress' ability to create non-Article III tribunals. *McCormick* reasoned it was unlikely that the Supreme Court intended to prohibit Article I courts from conducting jury trials, and that historically, Article I courts have conducted jury trials. *McCormick* cited as an example United States Magistrates, who with consent of the parties and authorization from the district court, may conduct jury trials in any or all proceedings. 67 B.R. at 840. Similarly, *In re Adams, Browning & Bates, Ltd.*, 70 B.R. 490 (Bankr.E.D.N.Y.1987), based its holding on the rationale that bankruptcy judges are like federal magistrates. "Despite the suggestion in *Marathon* that the ability to conduct jury trials is one of the indicia of an Article III court, jury trials have not been considered the exclusive province of Article III courts." *Id.* at 497–98.[7]

Magistrates' authority to conduct jury trials is granted in the Federal Magistrates Act, 28 U.S.C. 636, which provides that magistrates "[u]pon consent of the parties ... may conduct any or all proceedings in a jury or nonjury civil matter...." 28 U.S.C. § 636(c)(1). Thus, the scope of magistrates' authority is much broader than the bankruptcy judges' authority which is focused on the specialized area of core proceedings. If jury trials of core proceedings in Article I bankruptcy courts violate Article III, as UMB argues, then it appears that jury trials in magistrates' courts similarly violate Article III and all such matters previously referred to these two units of the district courts would have to be heard in the district courts, a result which would work a tremendous hardship on district courts.

*Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 2248, 104 L.Ed.2d 923 (1989), recently held that Congress did not intend to include jury selection in felony criminal trials among the duties a magistrate can perform under the Federal Magistrates Act. By this holding, limiting only the magistrates' power to empanel juries in criminal cases, the Supreme Court implicitly affirmed the power of Article I courts to conduct jury trials pursuant to a statutory grant of authority.

*C. No Seventh Amendment Violation*

In *Granfinanciera*, Justice Brennan expressed concern that the Seventh Amendment might be violated if bankruptcy judges conducted jury trials because under the standard of review in Bankruptcy Rule 8013, district courts may set aside clearly erroneous factual findings by bankruptcy judges. *Id.* 109 S.Ct. at 2795. The part of the Seventh Amendment which concerned him directs that "[n]o fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

The Seventh Amendment question may be valid as to non-core proceedings, since the district court conducts a *de novo* review in such matters. However, there is no constitutional violation in regard to core proceedings because a jury's findings of fact in a bankruptcy court trial would not be reviewed under Bankruptcy Rule 8013. The standard of review would be the same as for review of a district court jury's findings of fact. Contrary to UMB's arguments, nothing in the statutes or Bankruptcy Rules requires a "clearly erroneous" review of a jury's findings of fact in a bankruptcy trial of a core proceeding.

Bankruptcy Rule 8013 provides:

On an appeal the district court ... may affirm, modify, or reverse a bankruptcy *judge's* judgment ... or remand with

---

7. *See also* Cyr, *The Right To Trial By Jury In Bankruptcy: Which Judge To Preside?*, 63 Am. Bankr.L.J. 53, 59 (1989), which noted that Justice Brennan in *Northern Pipeline* "[a]t no time stated or implied that the power to preside over jury trials is an essential attribute of article III judicial power."

instructions for further proceedings. Findings of fact ... shall not be set aside unless clearly erroneous.... [emphasis added]

Bankruptcy Rule 8013 is intended to be applied in the same manner as F.R.C.P. 52. "This rule accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52." 1983 Advisory Committee Note to Bankruptcy Rule 8013. Similarly, the 1987 Advisory Committee Note explains that the purpose of an amendment to Bankruptcy Rule 8013 was to conform its standard of appellate review in bankruptcy to the standard in F.R.C.P. 52.

F.R.C.P. 52 provides a "clearly erroneous" standard of review when an appellate court examines a judge's findings of fact in a non-jury case. Bankruptcy Rule 8013 provides an identical standard for review of a bankruptcy judge's findings of fact. The district court, sitting as an appellate court in appeals from the bankruptcy judge's orders or judgments, uses the "clearly erroneous" standard in examining the bankruptcy judge's findings of fact. *Daniels–Head & Associates v. Mercer (In re Daniels–Head & Associates)*, 819 F.2d 914, 918 (9th Cir.1987).

F.R.C.P. 52 applies "[i]n all actions tried upon the facts without a jury or with an advisory jury...." Bankruptcy Rule 8013 expressly applies to a "bankruptcy judge's" judgments and orders. Thus, both F.R.C.P. 52 and Bankruptcy Rule 8013 were intended to apply only to judge-tried, non-jury cases.

The standard of review for a jury's findings of fact is altogether different than the standard applied to a judge's findings. The appellate court reviews a jury's findings of fact only to determine whether it is supported by substantial evidence. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546 (Fed.Cir.1983); *Cf. Nunes v. Bishop Aviation Inc.*, 703 F.Supp. 774 (W.D.Ark.1988).

If a jury verdict from bankruptcy court in a core proceeding were appealed to district court, Bankruptcy Rule 8013 would not be applicable, just as F.R.C.P. 52 would not be applicable in the appeal of a district court jury verdict. Rather, the reviewing court must examine the jury's findings of fact under the appropriate common law standard, which would be consistent with the requirement of the Seventh Amendment for review "according to the rules of the common law."

There is no conflict between Bankruptcy Rule 8013 and the constitutional prohibition in the second clause of the Seventh Amendment. Reading F.R.C.P. 52, Bankruptcy Rule 8013 and the second clause of the Seventh Amendment together, it is clear the Seventh Amendment would not be violated by a jury trial conducted by a bankruptcy judge in a core proceeding. When the district court reviews a jury's findings of fact from a bankruptcy court trial in a core proceeding, it must do so under the appropriate common law standard and not under Bankruptcy Rule 8013, just as the circuit court of appeals would review a district court jury's findings of fact under the common law standard and not under F.R.C.P. 52.

In conclusion, the court finds that reading 28 U.S.C. §§ 151, 157, and 1411 together, Congress has made a valid statutory grant of authority to bankruptcy courts to conduct jury trials, comparable to the statutory grant of authority to Article I magistrates to conduct jury trials, and that such statutory grant does not violate the Seventh Amendment's standard of review for jury trials.

In the event a higher court decides the bankruptcy court is without authority to conduct a jury trial, this court recommends that in order to conclude this case in the most expeditious manner, the case remain in the bankruptcy court for completion of pretrial procedures (which are now mostly completed) and should then be transferred to District Court for trial.

Accordingly, it is hereby

ORDERED that UMB's untimely demand for a jury trial is granted as a motion for jury trial under F.R.C.P. 39(b), and trial shall commence in bankruptcy court on

January 9, 1989, the date previously scheduled by agreement of the parties.